CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

JUL 26 2007

JOHN F. CORCORAN, CLERK
BY:
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JO'NATHAN TALBERT, # 346496 ) | |
|     Petitioner, ) | Civil Action No. 7:07-cv-00039 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| LARRY MULLINS, Inmate Hearing ) | |
| Officer, Red Onion State Prison, ) | By: Hon. Glen E. Conrad |
|     Respondent. ) | United States District Court Judge |

Jo'Nathan Talbert, a Virginia inmate proceeding pro se, filed this action as a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Talbert challenges the validity of five disciplinary hearings, subsequent to which his earning level for good conduct credits was decreased and his security-level was increased. The petition is presently before the court on respondent's motion to dismiss. For the reasons set forth below, the court will grant respondent's motion.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 18, 2005, while incarcerated at Wallens Ridge State Prison,[1] Talbert was charged with five disciplinary offenses and was subsequently transferred to Red Onion State Prison on September 19, 2005.[2]

I.     TALBERT'S FIVE DISCIPLINARY OFFENSES

Talbert committed his first offense at approximately 11:30 a.m. on September 18, 2005. After being placed in a medical holding cell, he threatened Officer J. Taylor. Consequently, Talbert

---

[1] Talbert was incarcerated at WRSP pursuant to his conviction on November 14, 2005 in the Circuit Court of the City of Norfolk. He was sentenced to a total term of imprisonment of 33 years, 2 months, and 50 days.

[2] Talbert was charged with the following disciplinary offenses:
    1)     Offense Code #212 - Threatening bodily harm to any person;
    2)     Offense Code #297/239(a) - Simple assault upon a non-inmate;
    3)     Offense Code #201 - Disobeying a direct order;
    4)     Offense Code #247 - Possession of STG (Security Threat Group) related materials;
    5)     Offense Code #102 - Possession of a weapon.

was charged with threatening bodily harm to any person. Later that day, Talbert was served with a copy of the Disciplinary Offense Report and advised of his rights for the upcoming hearing. When asked whether he needed an advisor for his disciplinary hearing, Talbert refused to respond, but then indicated that he did not wish to appear at his disciplinary hearing. Talbert was advised of his right to enter into a penalty offer of 15 days in isolation. An acceptance of the penalty offer was not received from Talbert, so a hearing was scheduled for September 30, 2005.

Talbert's second offense occurred at approximately 12:15 p.m. on September 18, 2005. Talbert kicked Officer W. Smith in the chest as Officer Smith was removing Talbert's leg irons. A subsequent search of Talbert's property yielded a handwritten note stating, "I hate these police. I want to do something dangerous to them." The note was signed with Talbert's "Five Percenter" name, "Superior Allah."[3] Consequently, Talbert was charged with a "Security Threat Group (i.e. gang) activity related to the simple assault of a non-inmate." Later that day, Officer McCoy served Talbert with a copy of the Disciplinary Offense Report and advised Talbert of his rights for the upcoming hearing. For this offense, Talbert requested to appear at his disciplinary hearing and also requested witnesses to appear on his behalf. Talbert refused to accept a penalty offer of 30 days isolation and the disciplinary hearing subsequently was scheduled for October 3, 2005.

At approximately 12:30 p.m. on September 18, 2005, Talbert committed his third offense when he informed Officer Barnette that "[he] was not returning to cell D-605, and no police on the mountain could make him go." Talbert refused several orders to return to his cell, and was

---

[3] "Five Percenter" refers to the Harlem-based Islamic group The Nation of Gods and Earths, also called the Five-Percent Nation. The group was formed by an excommunicated former member of the Nation of Islam in 1964 and teaches its members that they are the five percent of society who are enlightened divine beings, with knowledge of the "truth" regarding the foundations of life. See http://allahsnation.net; http://en.wikipedia.org/wiki/Five-percenter.

consequently charged with disobeying a direct order. Upon being served a copy of the Disciplinary Offense Report and being informed of his rights, Talbert requested to appear at his disciplinary hearing, but requested no advisor or inmate witnesses.

Talbert submitted four pages of questions for Officer Barnette to Inmate Hearing Officer ("IHO") Mullins. Mullins reviewed the questions and determined that many of the questions were either irrelevant or were untimely submitted after the 48-hour deadline. Mullins, however, did deem four questions relevant to the offense and Barnette responded. Talbert also submitted a documentary evidence request form in which he requested videotapes from the prison. Talbert claimed that the tapes would prove that he did not disobey a direct order. Mullins reviewed the requests and determined that, as the videotapes were not written documentary evidence, they would not be obtained. The disciplinary hearing was scheduled for October 6, 2005.

Talbert committed his fourth offense at approximately 2:15 p.m. on September 18, 2005. During the inventory of Talbert's property, Officer Hall found several papers consisting of Five Percenter Lessons, Crips gang literature, and letters written by a member of the Crips gang.[4] Officer Hall determined that the intent of the Crips gang literature was to educate the reader about the origins of the gang. Accordingly, Talbert was charged with possession of "Security Threat Group (i.e. gang) related materials." Talbert was subsequently served with a copy of the Disciplinary Offense Report and advised of his rights, including the right to enter into a penalty offer. For this offense, Talbert requested to appear at his disciplinary hearing and also requested witnesses to appear on his behalf.

---

[4] The Crips are a Los Angeles-based street gang. The Crips were founded by Raymond Washington in 1969, and identify themselves with the color blue. See http://en.wikipedia.org/wiki/Crips.

Talbert refused a penalty offer of a $7.00 fine and, therefore, a disciplinary hearing was scheduled for October 3, 2005.

Talbert's fifth and final offense also took place at approximately 2:15 p.m. on September 18, 2005. During the inventory of Talbert's property, Officer Hall found a sharpened piece of metal which was inside a letter secured in an envelope. Talbert stated that the piece of metal was his. As a result, Officer Hall charged Talbert with possession of a weapon. Later that day, Talbert was provided with a copy of the report and informed of his rights. Talbert refused to respond or indicate a preference to questions regarding his due process rights for this offense, but he did refuse a penalty offer of 30 days in isolation.

Pursuant to Division Operating Procedure ("DOP") 861, "[f]ailure to respond, or indicate a preference, constitutes a **WAIVER** of the first three (3) rights." The first three rights listed in DOP 861 are the right to request an inmate or staff advisor, the right to request witnesses, and the right to request documentary evidence. On September 28, 2005, Mullins received Witness Request Forms from Talbert in which he requested 10 inmates be permitted to provide statements, and a Documentary Evidence Request Form in which Talbert requested the videos from his housing unit at Wallens Ridge State Prison. Mullins denied the requests because Talbert had waived his right to witnesses and documentary evidence at the time he was served with the offense report. Furthermore, Mullins additionally denied the requests because the statements were found to be irrelevant, and also because videotapes were not proper written documentary evidence. Talbert's disciplinary hearing was scheduled for September 30, 2005.

    II.    <u>DISCIPLINARY HEARINGS</u>

4

Talbert's first two disciplinary hearings took place on September 30, 2005, in which IHO Mullins considered Talbert's first and fifth offenses – Offense Code # 212 (threatening bodily harm to any person), and Offense Code # 102 (possession of a weapon). For Talbert's hearing on the charge of threatening bodily harm to any person, Talbert refused to appear. In accordance with D.O.P. 861, refusal to appear at the hearing is considered an admission of guilt and a waiver of the inmate's right to call witnesses. Consequently, Talbert was found guilty of threatening bodily harm to Officer Taylor and was assessed a $12.00 fine. Talbert appealed the decision to Warden Tracy Ray, who upheld the decision on November 3, 2005. Talbert later appealed the guilty finding to Regional Director L.W. Huffman, who rejected the appeal on February 1, 2006.

Talbert was, however, present for his second disciplinary hearing on September 30, 2005. Officer Hall, who reported the offense, testified that he found sharpened metal in an envelope while inventorying Talbert's property and that Talbert claimed the metal piece as his own. Talbert testified that he knew nothing about a weapon and asserted that Hall had contradicted himself when indicating where the piece of metal was found. Mullins found Talbert guilty of possessing a weapon in his personal property and imposed a penalty of 60 days loss of telephone privileges. Talbert appealed the guilty finding to the Warden, who upheld the decision on October 20, 2005, and then further appealed the decision to the Regional Director, who rejected the appeal on January 6, 2006.

On October 3, 2005, IHO Mullins conducted the disciplinary hearings for Talbert's second and fourth offenses – Offense Code # 297/239a (simple assault upon a non-inmate), and Offense Code # 247 (possession of Security Threat Group related material). For Talbert's hearing on the charge of simple assault upon Officer Smith, Talbert appeared and pleaded not guilty. Officer Sergeant Still (the Reporting Officer) testified that Talbert assaulted Officer Smith by kicking him

5

in the chest. Officer Sergeant Still also testified that "Security Threat Group (i.e. gang) materials" were found in Talbert's property indicating that Talbert hated the officers and wanted to do something "dangerous" to them. Talbert testified that it was impossible for him to kick the officer as the charge stated, and also that, because the written materials were found after the alleged assault, they could not be used to show that the assault was related to a group activity. Mullins concluded that ties of the assault to Security Threat Group activity were inadequate to support the charge, but nonetheless found Talbert guilty of simple assault upon a non-inmate and imposed a fine of $12.00. Talbert appealed this decision to the Warden, who upheld Mullins' finding on November 1, 2005, and further appealed to the Regional Director, who rejected the appeal on February 6, 2006.

For Talbert's hearing on possession of Security Threat Group related material, Talbert was present and pleaded not guilty. Talbert admitted that he had the Crips and Five Percenter materials in his possession, but denied that he was in a gang and also denied that the materials were related to a Security Threat Group. After considering the testimony and the materials, Mullins determined that the materials were related to a Security Threat Group and found Talbert guilty. Mullins imposed upon Talbert a penalty of 60 days loss of telephone privileges, to run consecutively with the 60-day penalty already in place from the September 30 guilty findings. Talbert appealed this decision to the Warden, who upheld Mullins' finding on November 1, 2005, and further appealed to the Regional Director, who rejected the appeal on March 6, 2006.

Talbert's final disciplinary hearing – on Offense Code # 201 (disobeying a direct order) – was conducted by IHO Mullins on October 6, 2005. Talbert was present for the hearing and pleaded not guilty. Talbert testified that he did not refuse any orders, but if he did, he had the right to do so because he had asthma. Mullins found Talbert guilty of disobeying a direct order and imposed a fine

6

Case 7:07-cv-00039-GEC-mfu   Document 20   Filed 07/26/07   Page 6 of 10   Pageid#: 245

of $12.00. Talbert appealed this decision to the Warden, who upheld Mullins' finding on November 8, 2005, and further appealed to the Regional Director, who rejected the appeal on March 6, 2006.

As a result of guilty findings for all five offenses, Talbert was penalized a total of $36.00 in fines and lost telephone privileges for 120 days. Additionally, as a result of the infractions, Talbert was referred to the Institutional Classification Authority for review of his security level and good time earning level in accordance with DOP 821, the procedure which governs institutional classification management. Effective November 3, 2005, Talbert's security level was increased from Level 5 to Level 6, and his good time earning level was reduced from Level I to Level IV.

III.   HABEAS CORPUS PETITIONS

On April 7, 2006, Talbert filed a petition for writ of habeas corpus in the Supreme Court of Virginia, claiming that his Fourteenth and Fifth Amendment rights to due process were violated by Inmate Hearing Officer Mullins at Talbert's disciplinary hearings. Talbert contended that Mullins refused to consider allegedly exculpatory evidence, and that Mullins denied Talbert the right to call certain witnesses and introduce certain pieces of evidence. On June 19, 2006 the Supreme Court of Virginia adjudicated Talbert's claims on the merits, holding that they were frivolous, and denied the petition.

Talbert timely filed the instant petition on January 26, 2007, raising the same claims as he raised in his state habeas petition. Respondent moved to dismiss the petition on April 5, 2007, arguing that the decision made by the Supreme Court of Virginia is entitled to deference as it was not contrary to clearly established federal law or based upon an unreasonable determination of the facts. Talbert responded on April 11, 2007 and the petition is now ripe for review. The court will include additional facts in its discussion as necessary.

## ANALYSIS

A court may not grant relief on any claim that the state court has adjudicated on the merits unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)-(2); see Williams v. Taylor, 529 U.S. 362, 376-77 (2000). Clearly established federal law controlling the due process rights of prisoners in prison disciplinary proceedings states that inmates are entitled to the following due process guarantees: (1) advanced written notice of the claimed violation; (2) disclosure of evidence against the prisoner; (3) the right to confront and cross-examine witnesses (unless the hearing officer finds good cause not to allow confrontation); (4) a neutral, detached hearing body; and (5) a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken. Wolff v. McDonell, 418 U.S. 539, 564-71 (1974).

Talbert does not contest that notice of the charges was provided, that he was permitted to cross-examine witnesses, that IHO Mullins stated his findings in written decisions, or that the evidence was insufficient to convict him of the charged offenses. Talbert only alleges that IHO Mullins improperly denied Talbert the right to call certain witnesses and to present certain pieces of videotape evidence. Mullins reviewed the proposed evidence and witnesses for relevance and compliance with DOP rules. He found that the testimony of Talbert's proposed witnesses would be irrelevant, that many questions Talbert submitted were either irrelevant or untimely, and that the videotape evidence Talbert requested was irrelevant and, moreover, was not properly requested pursuant to established procedural rules. IHO Mullins denied Talbert's irrelevant and improper requests and permitted questioning when appropriate. Furthermore, pursuant to Wolff, inmates are

8

not guaranteed the right to present any evidence at a disciplinary hearing. Accordingly, the court finds that Talbert's due process rights, as stated in Wolff, were satisfied when Talbert received notice of his claimed offenses, the evidence to be used against Talbert was disclosed, Talbert was permitted to confront and cross-examine witnesses, a neutral and detached IHO conducted the hearing, and IHO Mullins stated his findings and the facts upon which his findings were based in writing.

Furthermore, Mullins' decisions were proper and Talbert's right to due process was satisfied if Mullins' decisions were supported by some, or a modicum, of evidence in the record. See Superintendent, Massachusetts Corr. Inst. at Walpole v. Hill, 472 U.S. 445 (1985). So long as the decision of the IHO (and the decisions of the officers reviewing the conviction on appeal) is based upon some evidence in the record, a federal court "will not inquire further into the validity of that decision." Brown v. Angelone, 938 F. Supp. 240, 245 (W.D. Va. 1996) (citing Hill, 472 U.S. at 445). The court finds that Mullins' decisions rested upon at least "some evidence" and was not arbitrary. The adjudication on the merits by the Supreme Court of Virginia was, therefore, not contrary to clearly established federal law.

Moreover, after a careful review of the transcripts and other portions of the record, the court finds that the Supreme Court of Virginia's adjudication on the merits of Talbert's claims was not based on an unreasonable determination of the facts. A statutory presumption is created by 28 U.S.C. § 2254(e)(1) that the determination of a factual issue made by a state court is correct. Therefore, the burden is on Talbert to rebut the findings of the Court that his claims are without merit "by clear and convincing evidence." See 28 U.S.C. § 2254(e)(1). Talbert, however, has offered no facts or law to rebut the decision of the Supreme Court of Virginia and, therefore, this court must defer to that decision. Accordingly, Talbert's claims must be dismissed.

9

## CONCLUSION

For the reasons stated, the court will grant respondent's motion to dismiss.

The Clerk is directed to send a certified copy of this Memorandum and Opinion and the accompanying Order to the petitioner.

ENTER: This 24th day of July, 2007.

*/s/ Jack Conrad*
United States District Judge